BNDDUTY,INTERPRETER

# U.S. District Court
## Southern District of Florida (Miami)
### CRIMINAL DOCKET FOR CASE #: 1:24−mj−04513−LFL−1

Case title: USA v. Su

Date Filed: 12/06/2024

Date Terminated: 12/11/2024

Assigned to: Magistrate Judge Lauren
Fleischer Louis

**Defendant (1)**

| | | |
|---|---|---|
| **Jingliang Su** | represented by | **Noticing FPD−MIA** |
| 13951−506 | | 305−530−7000 |
| *YOB:1980; Mandarin* | | Email: MIA_ECF@FD.org |
| *TERMINATED: 12/11/2024* | | *LEAD ATTORNEY* |
| *also known as* | | *ATTORNEY TO BE NOTICED* |
| Jingliang Su Martinez | | *Designation: Public Defender Appointment* |
| *TERMINATED: 12/11/2024* | | |
| *also known as* | | **Eboni Blenman** |
| James | | Federal Public Defender |
| *TERMINATED: 12/11/2024* | | 150 West Flagler Street, Suite 1700 |
| | | Miami, FL 33130 |
| | | (305) 530−7000 |
| | | Email: eboni_blenman@fd.org |
| | | *ATTORNEY TO BE NOTICED* |

| **Pending Counts** | **Disposition** |
|---|---|
| None | |

| **Highest Offense Level (Opening)** | |
|---|---|
| None | |

| **Terminated Counts** | **Disposition** |
|---|---|
| None | |

| **Highest Offense Level (Terminated)** | |
|---|---|
| None | |

| **Complaints** | **Disposition** |
|---|---|
| WARRANT\CENTRAL DISTRICT OF CALIFORNIA\COMPLAINT\18 U.S.C. § 1956(h) Conspiracy to | |

1

Commit Money Laundering

**Plaintiff**

USA                              represented by   **Noticing AUSA CR TP/SR**
                                                  Email: Usafls.transferprob@usdoj.gov
                                                  *LEAD ATTORNEY*
                                                  *ATTORNEY TO BE NOTICED*
                                                  *Designation: Retained*

| Date Filed | # | Docket Text |
|---|---|---|
| 12/06/2024 | 1 | Magistrate Judge Removal of Complaint from Central District of California Case number in the other District 2:24–mj–07038–DUTY as to Jingliang Su (1). (kan) (Entered: 12/06/2024) |
| 12/06/2024 | 3 | **ORAL** MOTION to Appoint Counsel by Jingliang Su. (cdb1) (Entered: 12/09/2024) |
| 12/06/2024 | 4 | Government's **ORAL** MOTION for Pretrial Detention hearing.(cdb1) (Entered: 12/09/2024) |
| 12/06/2024 | 5 | Defense **ORAL** MOTION for Bond by Jingliang Su. (cdb1) (Entered: 12/09/2024) |
| 12/06/2024 | 6 | Minute Order for proceedings held before Magistrate Judge Lauren Fleischer Louis: granting 3 Defense Ore Tenus Motion to Appoint Counsel. Appointing Noticing FPD–MIA for Jingliang Su. (1); granting 4 Government's Ore Tenus Motion for Bond. Bond recommendation: Jingliang Su (1) Pretrial Detention. as to Jingliang Su (1); denying 5 Defense Ore Tenus Motion for Bond. (1); Initial Appearance as to Jingliang Su held on 12/6/2024. Date of Arrest or Surrender: 12/5/24. ( Detention Hearing set for 12/11/2024 01:00 PM in Miami Division before MIA Duty Magistrate Judge., Removal Hearing set for 12/11/2024 01:00 PM in Miami Division before MIA Duty Magistrate Judge.). Mandarin Interpreter present. Attorney added: Noticing FPD–MIA for Jingliang Su, Noticing FPD–MIA, Noticing FPD–MIA for Jingliang Su (Digital 14:06:05;15:16:09) Signed by Magistrate Judge Lauren Fleischer Louis (cdb1) (Entered: 12/09/2024) |
| 12/07/2024 | 2 | Invocation of Right to Silence and Counsel by Jingliang Su (Blenman, Eboni) (Entered: 12/07/2024) |
| 12/09/2024 | 7 | NOTICE OF ATTORNEY APPEARANCE: Eboni Blenman appearing for Jingliang Su . Attorney Eboni Blenman added to party Jingliang Su(pty:dft). (Blenman, Eboni) (Entered: 12/09/2024) |
| 12/11/2024 | 8 | Minute Order for proceedings held before Magistrate Judge Lisette M. Reid: Status RE Removal and Detention hearing as to Jingliang Su held on 12/11/2024., Bond Set as to Jingliang Su (1) STIP PTD with right to revisit in CD/CA. Warrant of Removal issued. Mandarin Interpreter present. (Digital 13:19:14) <br><br> It is ORDERED AND ADJUDGED that pursuant to the Due Process Protections Act, the Court confirms the United States obligation to disclose to the defendant all exculpatory evidence– that is, evidence that favors the defendant or casts doubt on the United States case, as required by *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, and ORDERS the United States to do so. The government has a duty to |

| | | |
|---|---|---|
| | | disclose any evidence that goes to negating the defendants guilt, the credibility of a witness, or that would reduce a potential sentence. The defendant is entitled to this information without a request. Failure to disclose exculpatory evidence in a timely manner may result in consequences, including, but not limited to, exclusion of evidence, adverse jury instructions, dismissal of charges, contempt proceedings, disciplinary action, or sanctions by the Court. (Signed by Magistrate Judge Lisette M. Reid on 12/11/2024). (at) (Entered: 12/12/2024) |
| 12/11/2024 | 9 | WAIVER OF RULE 5 & 5.1 REMOVAL/IDENTITY HEARINGS by Jingliang Su (at) (Entered: 12/12/2024) |
| 12/11/2024 | 10 | COMMITMENT TO ANOTHER DISTRICT as to Jingliang Su. Defendant committed to CENTRAL DISTRICT OF CALIFORNIA. Closing Case for Defendant. (Signed by Magistrate Judge Lisette M. Reid on 12/11/2024). *(See attached document for full details).* (at) (Entered: 12/12/2024) |

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

FILED BY___ *mp* ___D.C.

Dec 6, 2024

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - Miami

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> PLAINTIFF, <br><br> v. <br><br> JINGLIANG SU, <br><br> aka "Jingliang Su Martinez" and "James," <br><br> DEFENDANT. | **WARRANT FOR ARREST** <br> **24-MJ-4513-LOUIS** <br><br> ON COMPLAINT <br><br> CASE NO.: __2:24-mj-07038-DUTY__ |

To:  UNITED STATES MARSHAL AND ANY AUTHORIZED UNITED STATES OFFICER

**YOU ARE HEREBY COMMANDED** to arrest defendant **JINGLIANG SU** and bring him forthwith to the nearest Magistrate Judge to answer a complaint charging him with Conspiracy to Commit Money Laundering, in violation of 18 U.S.C. § 1956(h).

REC. BY AUSA:  Detention

__November 22, 2024  12:39 p.m.__
Date

Honorable Alicia G. Rosenberg
Name of Magistrate Judge

*Alicia G. Rosenberg*
Signature of Magistrate Judge

| RETURN | | |
|---|---|---|
| This warrant was received and executed with the arrest of the above-named defendant at (location): | | |
| DATE RECEIVED <br><br> DATE OF ARREST | NAME AND TITLE OF ARRESTING OFFICER | SIGNATURE OF ARRESTING OFFICER |

**DESCRIPTIVE INFORMATION FOR DEFENDANT CONTAINED ON PAGE TWO**

AO 91 (Rev. 11/11)  Criminal Complaint (Rev. by USAO on 3/12/20)  ☐ Original  ☐ Duplicate Original

**LODGED**
CLERK, U.S. DISTRICT COURT

11/22/2024

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ASI_____ DEPTUY

# UNITED STATES DISTRICT COURT
### for the
### Central District of California

**FILED**
CLERK, U.S. DISTRICT COURT

11/22/2024

CENTRAL DISTRICT OF CALIFORNIA
BY: _____KL_____ DEPUTY

United States of America,

        Plaintiff,

        v.

JINGLIANG SU,
  aka "Jingliang Su Martinez" and
"James,"

        Defendant.

46/O L/6735/NQWKU

Case No.  **2:24-mj-07038-DUTY**

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

      I, the complainant in this case, state that the following is true to the best of my knowledge and belief. Beginning in or around August 2021 and continuing to on or about April 12, 2024, in the County of Los Angeles in the Central District of California, and elsewhere, the defendant violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 1956(h) | Conspiracy to Commit Money Laundering |

This criminal complaint is based on these facts:

 *Please see attached affidavit.*

☒ Continued on the attached sheet.

_____
*/s/ George Jasek*
*Complainant's signature*

George ("John") Jasek, USSS Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:    November 22, 2024         _____
                                       *Judge's signature*

City and state:   Los Angeles, California       Hon. Alicia G. Rosenberg, U.S. Magistrate Judge
                                                 *Printed name and title*

AUSAs: Maxwell Coll (1785) and Nisha Chandran (2429)

**AFFIDAVIT**

I, Special Agent George Jasek, being duly sworn, declare and state as follows:

## I.    PURPOSE OF AFFIDAVIT

1.    This affidavit is made in support of a criminal complaint and arrest warrant against **JINGLIANG SU**, also known as "Jingliang Su Martinez" and "James" (hereinafter referred to as "**SU**"), for conspiring to commit money laundering, in violation of Title 18, United States Code, Section 1956(h).

2.    The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and arrest warrant and does not purport to set forth all of my knowledge of investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and part only and all dates, times, and dollar amounts are approximate.

## II.    BACKGROUND OF AGENT

3.    I am a Special Agent ("SA") with the United States Secret Service ("USSS") and have been so employed since March 2018. I am currently assigned to the Criminal Investigative Division in Washington, District of Columbia. In preparation for my employment with USSS, I completed the Criminal Investigator Training Program at the Federal Law Enforcement Training Center in Glynco, Georgia. Additionally, I completed the Special Agent Training Course

("SATC") at the USSS James J. Rowley Training Center in Laurel, Maryland. While attending SATC, I received a five-day training titled "Basic Investigation of Computer and Electronic Crimes Program." In addition to these training programs, I have completed numerous in-service training courses related to constitutional law. Prior to my employment with USSS, I was a full-time certified Police Officer in New Hampshire for more than five years. My present duties include the investigation of federal offenses, including, but not limited to, those involving financial fraud and its related activities. As part of my duties, I have conducted numerous financial crime and financial fraud investigations. These investigations have included but are not limited to federal violations of wire fraud, bank fraud, money laundering, and identity theft statutes. During the course of these investigations, I have conferred with other investigators who specialize in computer forensics and who have conducted investigations regarding financial fraud crimes. I have received additional training regarding computers which includes Basic Network Intrusion Responder Training, Incident Response Analysis, and virtual currency training.

### III. <u>SUMMARY OF PROBABLE CAUSE</u>

4. USSS is investigating an international money-laundering syndicate that launders the proceeds of fraud schemes, including cryptocurrency investment scams and other currency-related frauds commonly referred to as "pig-butchering." Victims of the schemes under investigation were fraudulently induced into transferring millions of dollars to U.S. bank accounts opened in the names of

dozens of shell companies whose sole apparent purpose was to facilitate the laundering of fraud proceeds. Many of these accounts and shell companies were located in the Central District of California. A network of money launderers then facilitated the transfer of those funds to other domestic and international bank accounts and cryptocurrency platforms in a manner designed to conceal the source, nature, ownership, and control of the funds.

5. Specifically, co-conspirators set up approximately 74 U.S. shell companies and opened bank accounts with U.S. financial institutions including Bank of America, JPMorgan Chase Bank ("JPMC"), and Wells Fargo. These bank accounts received millions of dollars in wire fraud proceeds from U.S. victims of cryptocurrency scams. After the receipt of fraud proceeds into these U.S. bank accounts, a network of U.S.-based money launderers executed transactions transferring the proceeds to two bank accounts established at Deltec Bank and Trust ("Deltec Bank") in the Bahamas. The first Deltec Bank account, "Bahamas Account #1," was an account at Deltec Bank opened in the name of the business entity Axis Digital Limited. The second Deltec Bank account, "Bahamas Account #2," was an account at Deltec Bank opened in the name of the business entity GTAL. Both Deltec Bank accounts received millions in fraud proceeds from U.S. victims.[1]

6. **SU** worked with multiple co-conspirators to direct funds into and out of Bahamas Account #1. Co-Conspirator 1 is a U.S. citizen based in Los Angeles and a founder of Axis Digital Limited,

---

[1] The fraud proceeds first flowed through a Deltec-affiliated bank account at Mitsubishi UFJ Trust and Banking Corporation ("MUFJ Account") in New York, New York.

3

the Bahamian entity established to open Bahamas Account #1. Co-Conspirator 2 is a U.S. citizen who resided in California and Mexico. **SU**, Co-Conspirator 1, and Co-Conspirator 2 used Bahamas Account #1 to launder fraudulent proceeds and convert the funds into the cryptocurrency Tether ("USDT").[2] **SU** and his co-conspirators received more than $36 million in fraud proceeds into Bahamas Account #1 from U.S. shell company bank accounts and oversaw the conversion of all of the proceeds into USDT, and the transfer of the proceeds to foreign-controlled cryptocurrency wallets. As discussed herein, **SU** maintained Know Your Customer ("KYC") documents for the fraudulent shell entities, was a signatory on Bahamas Account #1, participated in communications with Deltec Bank, and directly received victim proceeds into his personal cryptocurrency account.

7. The government has charged several individuals related to this scheme. First, in <u>United States v. Lu Zhang, et al</u>., 2:23-CR-596-RGK, the government indicted four individuals – LU ZHANG, JUSTIN WALKER, JOSEPH WONG, and HAILONG ZHU – with conspiracy to commit money laundering and substantive money laundering. Defendants LU ZHANG and JUSTIN WALKER pleaded guilty to conspiracy to commit money laundering, and the two remaining defendants are fugitives. Each defendant was involved in the U.S.-based money-laundering network and effectuated financial transactions sending fraud proceeds from U.S. shell company bank accounts to Bahamas Account #1.

---

[2] Tether, or "USDT," is a stablecoin pegged to the U.S. dollar.

4

8.    Second, in <u>United States v. Daren Li, et al</u>., 2:24-CR-311-RGK, the government indicted two individuals – DAREN LI and YICHENG ZHANG – with conspiracy to commit money laundering and substantive money laundering.  Defendant DAREN LI pleaded guilty to money laundering conspiracy.  YICHENG ZHANG is presently set for trial in April 2025.  Defendant LI was involved in the direction of funds into and out of Bahamas Account #1 and Bahamas Account #2.  Defendant ZHANG was involved in the domestic money-laundering network.

9.    **SU** and his co-conspirators played integral roles in the laundering of funds through the Deltec Bank accounts.

## IV.   TECHNICAL TERMINOLOGY

10.  Based on my training, research, education, and experience, I am familiar with the following relevant terms and definitions:

11.  "Digital currency" or "virtual currency" is currency that exists only in digital form; it has the characteristics of traditional money, but it does not have a physical equivalent.  Cryptocurrency, a type of virtual currency, is a network-based medium of value or exchange that may be used as a substitute for fiat currency to buy goods or services or exchanged for fiat currency or other cryptocurrencies.[3]  Examples of cryptocurrency are bitcoin ("BTC"), Ether ("ETH"), USDT, and USDC.  Cryptocurrency can exist digitally on the internet, in an electronic storage device, or in cloud-based servers.  Cryptocurrency can be exchanged

---

[3]  Fiat currency is currency issued and regulated by a government such as the U.S. Dollar, Euro, or Japanese Yen.

5

directly person to person, through a cryptocurrency exchange, or through other intermediaries. Most cryptocurrency is not issued by any government, bank, or company; it is instead generated and controlled through computer software operating on a decentralized peer-to-peer network. Most cryptocurrencies have a "blockchain," which is a distributed public ledger, run by the decentralized network, containing an immutable and historical record of every transaction.[4] Cryptocurrency is not illegal in the United States.

12. Stablecoins are a type of virtual currency whose value is pegged to a commodity's price, such as gold, or to a fiat currency, such as the U.S. dollar, or to a different virtual currency. Stablecoins achieve their price stability via collateralizations (backing) or through algorithmic mechanisms of buying and selling the reference asset or its derivatives. USDT, or Tether, is a type of stablecoin. USDT is pegged to the U.S. dollar, such that $1 is equal to 1 USDT.

13. An "Internet Protocol address" or "IP address" is a numerical address assigned to each computer connected to a network that uses the internet for communication. Internet Service Providers assign IP addresses to their customers. Because every device that connects to the internet must use an IP address, IP address information can help to identify which computers or other devices were used to access an account. The type of application or service provider a particular customer is using often determines how long they will be assigned the same IP address. For instance,

---

[4] Some cryptocurrencies operate on blockchains that are not public.

someone who rents computer servers can lease an IP address long-term and maintain it for several years. In my training and experience, residential Internet Service Providers often lease the same IP address to a customer over months to a year. Cellular phone provider customer IP addresses often change more frequently. Email providers, internet providers, and even cybercrime forums often record the IP address used to register an account and the IP addresses associated with particular logins to the account. In my training and experience, when the same IP address is used to access different internet services in close temporal proximity, it tends to show the same computer or computer network was used to access those services. When several instances of this IP address overlap exist over time from different service providers, it makes it very likely that the same person or group of people sharing internet infrastructure are behind the accesses.

14. A domain name is a simple, often easy-to-remember way for humans to identify computers on the internet, using a series of characters (*e.g.*, letters, numbers, or other characters) that correspond with a particular IP address. For example, "usdoj.gov" and "cnn.com" are domain names.

15. The term "spoofed" refers to domain spoofing and involves a cyberattack in which fraudsters and/or hackers seek to persuade consumers that a web address or email belongs to a legitimate and generally trusted company, when in fact it links the user to a false site controlled by a cybercriminal.

## V.   STATEMENT OF PROBABLE CAUSE

16.   Based on records, witness interviews, my review of electronic communications, and my knowledge of this investigation, I know the following:

**A.   Investigation into a Cryptocurrency Investment Scheme**

17.   In September 2022, law enforcement began an investigation into a criminal money-laundering syndicate operating cryptocurrency investment scams, also known as "pig- butchering." The term "pig butchering" (derived from the Chinese phrase used to describe this scheme) is a type of scam that involves scammers grooming their victims to gain their confidence. After developing a relationship and gaining trust, scammers instruct their victims to make significant capital investments in what victims believe are legitimate cryptocurrency trading platforms. In this syndicate, the scammers promoted spoofed domains and websites purporting to be legitimate cryptocurrency trading platforms to U.S. victims, including within the Central District of California. Scammers then fooled victims into "investing" in cryptocurrency through these fraudulent investment platforms, which instead allowed the scammers to steal their money.

18.   Once victim funds were obtained, the syndicate utilized various money-laundering techniques to conceal the nature and source of the victim funds. These techniques include the use of money couriers, a high volume of financial transactions with no legitimate commercial purpose, and shell accounts.

19.   Structurally, the money-laundering syndicate comprised of (1) money mules who received the fraud proceeds directly through

8

shell company accounts; (2) individuals who recruited, trained, and managed the money mules; (3) intermediary companies that facilitated the conversion of the fraud proceeds into cryptocurrency, or received cryptocurrency fraud proceeds directly and transfer them on; and (4) individuals who managed the network, connecting the organizations running the scamming operation with the laundering network.

**B.    Victim 1 Transfers Funds to Bahamas Account #1**

20.    On or about December 19, 2022, law enforcement interviewed Victim 1, who resided in Santa Ana, California, within the Central District of California. Victim 1 noted they were a victim of a cryptocurrency investment scam. More specifically, Victim 1 sent approximately $84,460 via wire transfers from their Bank of America account intended to be investments in cryptocurrency through a website called "gammaex.net" ("GAMMAEX"). Victim 1 noted that on or about August 24, 2022, they met an individual named "Daniel" on a Facebook dating app. Around that time, Victim 1 began chatting on WhatsApp and Telegram with Daniel. Victim 1 noted that they believed they were in a romantic relationship with Daniel. Further, Victim 1 provided law enforcement with their chat records with Daniel, and I can confirm the chats were romantic in nature.

21.    Victim 1 noted that Daniel soon began promoting cryptocurrency investments and told Victim 1 they could make a lot of money. According to Victim 1, they did not understand cryptocurrency and Daniel provided Victim 1 with a link to a cryptocurrency investment website (GAMMAEX) to start making

investments. Victim 1 further stated that Daniel instructed Victim 1 to consult the online customer service portal to start making payments.

22. On or about September 26, 2022, Victim 1 contacted GAMMAEX customer service through the online portal and was directed to send $25,000 via wire from their Bank of America account to a wire address provided by the GAMMAEX customer service platform. Victim 1 then began to see via the GAMMAEX platform that they had made significant profit, which encouraged Victim 1 to make additional investments. On or about October 12, 2022, Victim 1 wired another $31,000 from their Bank of America account to a JPMC account ending 3886 ("JPMC account 3886"), in the name of Sea Dragon Trading, LLC, that was opened by Hailong Zhu,[5] who was the sole signatory of JPMC account 3886. Further, law enforcement learned JPMC account 3886 was registered to an address in California that is known to be associated with Zhu.

23. On or about October 24, 2022, Victim 1 then attempted to make a withdrawal from GAMMAEX; however, online customer service from GAMMAEX informed Victim 1 that their account was frozen and that they needed to pay $28,460 in taxes. Consequently, on or about October 24, 2022, Victim 1 wired $28,460 from their Bank of America account to another account provided by GAMMAEX. Victim 1 then attempted another withdrawal from GAMMAEX, and customer service informed Victim 1 that their account had been frozen due to suspicious activity and a security deposit of 30% was required

---

[5] Zhu is a defendant in <u>United States v. Lu Zhang</u>, 2:23-CR-596-RGK, discussed in paragraph 7 above.

to unfreeze their account. On or about November 12, 2022, when unable to withdraw any investment proceeds, Victim 1 concluded they were a victim of a scam and ceased making additional transfers.

24. Victim 1 has been unable to recover any of their funds. Victim 1 shared chat communications with law enforcement, which corroborate the false and fraudulent statements that induced Victim 1 to invest in the scheme.

25. Records obtained for JPMC account 3886 belonging to Sea Dragon Trading, LLC, reflect Victim 1's $31,000 deposit on October 12, 2022. JPMC records reveal that on October 17, 2022, $40,000 was wired from JPMC account 3886 to account associated with Bahamas Account #1.[6] Records obtained from Deltec Bank show that the $40,000 in fraud proceeds originating from JPMC account 3886 were deposited into Bahamas Account #1 on October 17, 2022.

26. Deltec Bank records also reveal that later, on October 17, 2022, the $40,000 in proceeds, including the $31,000 from Victim 1, were transferred to Delchain Limited[7] (hereinafter "Delchain") and used to purchase USDT.

27. Sea Dragon Trading, LLC has been the subject of numerous other victim complaints. California Secretary of State records show that Sea Dragon Trading, LLC was incorporated in Alhambra, California within Los Angeles County, in September of 2022. The

---

[6] As noted above, funds first flowed to a Deltec Bank-owned account at MUFJ in New York, New York, before transferring to Deltec Bank.

[7] Delchain Limited is a virtual-currency entity associated with Deltec Bank.

company is registered to a residential address with a stated business purpose of "General TRADING." Based on my training and experience, and review of documents, the company was not involved in "General TRADING," but rather, was a shell company set up for the sole purpose of receiving fraud proceeds.

28. Victim 1's experience with the fraud is generally consistent with those of hundreds of other victims who have reported their losses to law enforcement, including other victims in the Central District of California. Additionally, the set-up and operation of Sea Dragon Trading, LLC is consistent with that of another 73 shell companies that law enforcement has identified as being connected to this scheme, including numerous other companies incorporated in or associated with the Central District of California.

**C. SU Provided Funding to Open Bahamas Account #1**

29. According to Deltec Bank Records for Bahamas Account #1, Co-Conspirator 1, a Los Angeles-based individual, was the account owner of Bahamas Account #1, which received approximately $36.9 million in fraud proceeds from USSS-identified shell companies. During the account-opening process, Deltec Bank obtained income verification from Co-Conspirator 1. On or around June 15, 2022, Co-Conspirator 1 provided Deltec Bank with a screenshot of his Binance.US account balance, which showed the balance as $1,016,730.79 as of June 8, 2022. Binance.US is a cryptocurrency exchange.

30. Binance.US records reveal that before June 8, 2022, Co-Conspirator 1 had less than $100 in his Binance.US account.

Records show that on June 8, 2022, Co-Conspirator 1 received 9.9684 ETH (approximately $17,862[8]) from a Binance account. Records also show that Co-Conspirator 1's Binance.US account received three other deposit transactions from another Binance account on June 8, 2022, which include: 640,010 USDT ($640,010), 199.9984 ETH (approximately $358,373), and 1,000 USDT ($1,000). Binance records show that the 9.9684 ETH transaction came from a Binance account associated with **SU**, and the three other deposits came from a Binance account associated with Li.

31. Binance records show that **SU** opened his Binance account in his true name and used the email address jingliangsu@gmail[.]com. The subscriber information for **SU**'s Binance account also lists a mobile phone number of +8613269589330 ("the 9330 phone number"). The KYC documents for **SU**'s Binance account show a Chinese ID card that was issued on March 13, 2012, and a selfie-style photograph used for KYC verification during account opening. The Chinese ID and selfie photograph are included below. I recognize **SU** as the individual depicted on the Chinese ID card and in the selfie-style photograph because the photos match images found of the same individual under the same name in law enforcement databases. The photos also match photos taken of **SU** by authorities in the Dominican Republic, as further described below.

---

[8] The converted values of cryptocurrency listed herein are as of the time of the transaction, not the present value, unless stated otherwise.

*Figure 1*



32.  On June 10, 2022, two days after the screenshots showing a large balance in Co-Conspirator 1's Binance.US account were taken, Co-Conspirator 1 returned 9.96651 ETH ($16,573) to **SU**'s Binance account.  Based on these transactions, I believe Co-Conspirator 1 utilized funds from **SU** and Li, neither of whom were listed as authorized account holders at the time of account opening, to open Bahamas Account #1.  Furthermore, the timing of the funds sent by and returned to **SU** indicates that the only purpose of the transfer from **SU** was to intentionally provide false income for Co-Conspirator 1 to facilitate the opening of Bahamas Account #1.

**D. SU Actively Participated in Bahamas Account #1 Operations**

33.  Bank records and communications, including communications between **SU** and Co-Conspirator 1, show that **SU** had knowledge of the activity of Bahamas Account #1 and was an active participant in operating the account.

14

34.    As discussed above, Bahamas Account #1 was used to receive incoming wires in fiat currency (U.S. dollars) and then convert those funds to the cryptocurrency Tether, or USDT.    In order to communicate with Deltec Bank employees regarding the purchase and transfer of U.S. dollars to USDT, Deltec Bank (and its cryptocurrency affiliate Delchain) started a group chat on Telegram, an encrypted messaging platform.    I have reviewed the message logs in this chat and know that on July 15, 2022, a user with the name "James S" joined the Telegram chat.

35.    In these message logs, it appears that on August 5, 2022, at 12:29 p.m., Co-Conspirator 1 wrote, "Hello Delchain team: Please be advise[d] that moving forward on future transactions we will be using the following wallet address as a receiver wallet. TRteottJGH5caJyy9qFuM8EJJGGCpDaxx6 Axis (our team) group please kindly confirm the above information. Thank you."    Message logs then show that at 12:30 p.m., "James S" wrote, "confirm."

36.    In April 2024, **SU** was arrested in the Dominican Republic for fraudulent use of a passport.    As a result of that investigation, Dominican Republic law enforcement seized and searched two of **SU**'s cell phones, an Apple iPhone 13 Pro Max and an Apple iPhone 14 Pro Max (hereinafter "**SU**'s iPhone 13" and "**SU**'s iPhone 14," respectively, and collectively, "**SU**'s iPhones").    Dominican Republic law enforcement provided USSS with forensic images of **SU**'s iPhones.[9]

---

[9] A Mutual Legal Assistance Request to document the transfer of this evidence is pending with Dominican Republic.

37.    I have reviewed the forensic images of **SU**'s iPhones and confirmed that the Telegram application was downloaded on **SU**'s iPhones.  I have also reviewed messages on a different messaging platform, WhatsApp, between **SU** and Co-Conspirator 1 on **SU**'s iPhone 14.   On December 28, 2022, **SU** asked Co-Conspirator 1, "Did the bank reply?" to which Co-Conspirator 1 answered, "Are you in the group? Do you see the activity?" **SU** replied, "I'm in the group, waiting for the bank's reply."   From **SU**'s messages sent in this chat with Co-Conspirator 1, I believe the bank that **SU** is referring to is Deltec Bank.

38.    I have reviewed additional WhatsApp messages on **SU**'s iPhone 13.   On January 17, 2023, **SU** sent a photo of the last conversations in his Telegram chat history.   One chat in that photo is titled "Deltec Bank Customer Service," shown below in Figure 2. From this, as well as other communications between **SU** and Co-Conspirator 1, I believe that the "James S" in the Delchain Telegram group chat is **SU**.

Figure 2



39.  I have also reviewed messages between **SU** and Co-Conspirator 1 on **SU**'s iPhone 14, where they often discussed Bahamas Account #1.  For example, on October 3, 2022, **SU** said to Co-Conspirator 1, "hi, bro. We had a few remittances last week and I want you to help me check if they have arrived."  **SU** then sent a PDF titled "$250,000 (20220927)" and another PDF titled "$190,000 (20220927)."

40.  The PDF titled "$250,000 (20220927)" is a wiring form from a U.S. financial institution showing $250,000 being sent from an entity called YXJ Trading Corporation to Bahamas Account #1. The PDF titled "$190,000 (20220927)" is a wiring form from another U.S. financial institution showing a wire for $190,000 sent by an

17

entity called YYJ Consulting Corporation for the benefit of Bahamas Account #1.

41. I know from the course of this investigation that YXJ Trading Corporation and YYJ Consulting Corporation were created and operated like Sea Dragon Trading, LLC – discussed above in connection with Victim 1. I also know that shell companies were set up in the United States by money mules for the purpose of moving fraud proceeds out of the United States, and that both YXJ Trading Corporation and YYJ Consulting Corporation received victim funds directly. I also know that these money mules would send copies of the wire forms to the group's leadership as proof that they were sending the funds to the intended recipient. The fact that **SU** had copies of and sent these wire forms indicates he was in communication with this group and knew when shell companies had wired funds to Bahamas Account #1.

**F. SU Provided KYC Documents for Bahamas Account #1**

42. Google records reveal that in July 2022, Co-Conspirator 1 emailed Co-Conspirator 2 a document titled "KYC Axis Digital Chinese." This document included basic client information that a business would typically require from a prospective customer to set up an account, such as identification, contact information, and a signature. In addition, on September 13, 2022, Co-Conspirator 1 sent Co-Conspirator 2 an email with the subject line, "Contract," that contained an attachment of a blank form entitled, "Digital Transaction Agreement", as shown below in Figure 3. The form appears to be a contract agreement between the transferee and

transferor for the exchange of U.S. dollars into USDT for an agreed upon exchange rate:

**Figure 3**



43.   On September 15, 2022, Co-Conspirator 1 sent Deltec Bank four separate emails with subject line "Contract," "Contract 2," "Contract 3," and "Contract 4," all containing executed and signed versions of the same contract agreement that Co-Conspirator 1 sent to Co-Conspirator 2 on September 13, 2022.  Figure 4 below shows a purported executed Digital Transaction Agreement between SKJ Trading LLC, a known shell company that received victim proceeds, and Bahamas Account #1 to convert $180,000 into 179,640.72 USDT

that was sent by Co-Conspirator 1 to Deltec Bank on September 15, 2022. All contracts appeared to have the same information in the "Transferee" section, along with the same Transferee wallet address.

*Figure 4*



44. Law enforcement obtained records from Google regarding email account jingliangsu@gmail.com, the same account **SU** used to register for his Binance account. Google records list "James Su" as the name of the subscribing customer, and **SU**'s date of birth as the same date listed on the identity document provided to open **SU**'s Binance account, as shown in Figure 1 above. In addition, the subscriber information for jingliangsu@gmail.com lists the

9330 phone number as both the account holder's phone number and as a recovery phone number.

45. Google records reveal that **SU's** Google Drive contained what appears to be monthly folders with the Digital Transaction Agreements for hundreds of transactions. Based on review of the hundreds of Digital Transaction Agreements in **SU's** Google Drive, the contracts are substantially identical to the contracts shown above in Figures 3 and 4. Additionally, based on review of Bahamas Account #1 bank statements, these Digital Transaction Agreements correspond to transactions that Bahamas Account #1 received.

46. I have reviewed the Digital Transactions Agreements in **SU's** Google Drive. Based on my knowledge of this investigation, I believe that the purpose of these Digital Transaction Agreements agreements is to provide documentation to verify funds being sent to Deltec Bank in order to convert the fiat funds in Bahamas Account #1 into cryptocurrency. The Digital Transaction Agreements also provided a cryptocurrency address that the converted funds should be sent to. The vast majority of the funds were sent to the cryptocurrency address TRteottJGH5caJyy9qFuM8EJJGGCpDaxx6 ("Daxx6"), which is the same address **SU** confirmed was the correct address for the funds to be sent to in the Deltec Telegram chat referenced in paragraph 35 above.

47. In addition to the Digital Transactions Agreements, **SU's** Google Drive also contained multiple KYC forms for many of the shell companies that sent wires to Bahamas Account #1. I have reviewed victim complaints relating to many of these shell

companies reporting that victims fell victim to pig butchering fraud scams and sent funds to those shell companies. These KYC forms in **SU**'s Google Drive include Statements of Information, which often provide a type of business these shell companies were purportedly engaged in. I have reviewed these Statements of Information, and noted the types of business these companies stated, which included "logistics," "wholesale," and "remodeling services." There is no legitimate business reason why wholesale, logistics, or remodeling companies would be sending large dollar wires to a bank in the Bahamas for their funds to be converted into cryptocurrency.

48. Based on my training and experience, the fact that **SU** possessed the monthly Digital Transaction Agreements for hundreds of transactions supports that he participated in the management of Bahamas Account #1.

**G. SU Prepared and Sent Ledgers Regarding Bahamas Account #1**

49. I have reviewed messages between **SU** and Co-Conspirator 2, and another co-conspirator, Co-Conspirator 3, on **SU**'s iPhone 13. Co-Conspirator 3 is a Chinese national based in Japan. In these messages, **SU** sent what appears to be accounting ledgers showing how the profits would be shared from each shell company deposit into Bahamas Account #1. The ledgers **SU** sent specify a breakdown of payments made to Co-Conspirator 1, Co-Conspirator 2, Daren Li, and Co-Conspirator 3 regarding transactions sent to Bahamas Account #1. The ledgers **SU** sent largely match records provided by Deltec Bank for Bahamas Account #1. An example of a

22

ledger **SU** sent in a message to Co-Conspirator 2 and Co-Conspirator 3 on November 14, 2022, is shown below in Figure 5:

*Figure 5*

| date | account name | transfer amount | status | cost | Total profit | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 27/9/2022 | YYJ CONSULTING CORPORATON | 190000 | 1900 | 380 | 1520 | 608 | 380 | 380 | 152 |
| 27/9/2022 | YXJ TRADING CORPORATION | 250000 | 2500 | 500 | 2000 | 800 | 500 | 500 | 200 |
| 06/10/2022 | GOOD LUCK TRADING LLC | 30000 | 300 | 60 | 240 | 96 | 60 | 60 | 24 |
| 07/10/2022 | GUDI TRADING INC | 80000 | 800 | 160 | 640 | 256 | 160 | 160 | 64 |
| 07/10/2022 | YYJ CONSULTING CORPORATON | 45000 | 450 | 90 | 360 | 144 | 90 | 90 | 36 |
| 14/10/2022 | GOOD LUCK TRADING LLC | 50000 | 500 | 100 | 400 | 160 | 100 | 100 | 40 |
| 14/10/2022 | QAG TRADING LLC | 110000 | 1100 | 220 | 880 | 352 | 220 | 220 | 88 |
| 14/10/2022 | QAG TRADING LLC | 60000 | 600 | 120 | 480 | 192 | 120 | 120 | 48 |
| 17/10/2022 | YYJ CONSULTING CORPORATON | 102000 | 1020 | 204 | 816 | 326.4 | 204 | 204 | 81.6 |
| 17/10/2022 | SEA DRAGON TRADING LLC | 40000 | 400 | 80 | 320 | 128 | 80 | 80 | 32 |
| 17/10/2022 | SEA DRAGON TRADING LLC | 15000 | 150 | 30 | 120 | 48 | 30 | 30 | 12 |
| 18/10/2022 | QAG TRADING LLC | 40000 | 400 | 80 | 320 | 128 | 80 | 80 | 32 |
| 18/10/2022 | YYJ CONSULTING CORPORATON | 78000 | 780 | 156 | 624 | 249.6 | 156 | 156 | 62.4 |
| 19/10/2022 | GUDI TRADING INC | 60000 | 600 | 120 | 480 | 192 | 120 | 120 | 48 |
| 19/10/2022 | GOOD LUCK TRADING LLC | 64000 | 640 | 128 | 512 | 204.8 | 128 | 128 | 51.2 |
| 20/10/2022 | QAG TRADING LLC | 72000 | 720 | 144 | 576 | 230.4 | 144 | 144 | 57.6 |
| 20/10/2022 | YYJ CONSULTING CORPORATON | 59000 | 590 | 118 | 472 | 188.8 | 118 | 118 | 47.2 |
| 20/10/2022 | SEA DRAGON TRADING LLC | 225000 | 2250 | 450 | 1800 | 720 | 450 | 450 | 180 |
| 21/10/2022 | GOOD LUCK TRADING LLC | 86000 | 860 | 172 | 688 | 275.2 | 172 | 172 | 68.8 |
| 21/10/2022 | QAG TRADING LLC | 40000 | 400 | 80 | 320 | 128 | 80 | 80 | 32 |
| 24/10/2022 | QAG TRADING LLC | 53000 | 530 | 106 | 424 | 169.6 | 106 | 106 | 42.4 |
| | TOTAL | 1749000 | 17490 | 3498 | 13992 | 5596.8 | 3498 | 3498 | 1399.2 |

50.   **SU** sent similar ledgers on at least two other occasions in messages to Co-Conspirator 2 and Co-Conspirator 3 on January 14, 2023, and February 10, 2023.  Moreover, on November 14, 2022, approximately one hour before sending the ledger depicted above as Figure 5, **SU** sent a message in Mandarin that was translated by a USSS Linguist to English that reads, "I just completed the profit sharing."  **SU** then sent the ledger depicted in Figure 5.

**H. SU Was Added as Signatory for Bahamas Account #1**

51.   I have reviewed messages between **SU** and Co-Conspirator 1 on **SU**'s iPhone 14.  On June 27, 2023, Co-Conspirator 1 sent **SU** a PDF titled "2023-06-27 12-47."  The PDF is a memorandum dated June 27, 2023, from Co-Conspirator 1 to Deltec Bank.  The memorandum pertains to Bahamas Account # 1 and states that **SU** is

23

a Director of Bahamas Account #1.  The memorandum further gives authorization for Deltec Bank to add **SU** as a signatory of Bahamas Account #1, using the name "Jingliang Su Martinez."  The memorandum is attached below as Figure 6.

*Figure 6*



## I. SU's Binance Account Directly Launders Victim Proceeds

52.  A financial analysis of **SU**'s Binance account also reveals that **SU** moved direct victim proceeds into the Daxx6 cryptocurrency address.  USSS identified an Internet Crime Complaint Center ("IC3") complaint in which an individual ("Victim 2") stated that they fell victim to a pig butchering fraud scam.

24

Per the IC3 complaint, Victim 2 met an individual on LinkedIn and began to communicate with them online. In the course of these conversations, Victim 2 was convinced to invest in gold options via the purchase of cryptocurrency. Victim 2 stated that they purchased cryptocurrency to "invest" by sending wires to various cryptocurrency exchanges, including Coinbase, from Victim 2's Bank of America account ending in 3898 ("BOA account 3898").

53. I have reviewed Coinbase records for Victim 2's account with that cryptocurrency exchange. These records show that on October 3, 2022, Victim 2 deposited $24,990 dollars from BOA account 3898 into their Coinbase account. The Coinbase records for Victim 2's account show that Victim 2 used these funds to purchase 18.54048775 worth of ETH, and then later that day, transferred the purchased ETH to an unhosted wallet address.[10] Minutes later, the funds were sent to another unhosted wallet address, which then sent nearly the same amount of funds to a service called Tokenlon, where the funds were swapped from 18.47 ETH to 24,274.23 USDT and sent to another unhosted wallet address.

54. The 24,274.23 USDT were then comingled with other funds in the wallet, and the next day, on October 4, 2022, the wallet sent 36,737 USDT, including Victim 2's funds, to another unhosted wallet address. That unhosted wallet subsequently had two withdrawals, with no additional deposits. One of these withdrawals, for 30,000 USDT, was sent again through two additional

---

[10] An unhosted cryptocurrency wallet is a wallet that is not hosted by a cryptocurrency exchange. The user/users who hold the private keys to the wallet is typically the only one who can access and manage their cryptocurrency assets.

unhosted wallet addresses. Finally, on October 13, 2022, 75,000 USDT, which included Victim 2's funds, were sent from the unhosted wallet address to **SU**'s Binance account.

55. Furthermore, an analysis of the withdrawals from **SU**'s Binance account show that, on October 13, 2022, following the deposit of the 75,000 USDT into **SU**'s Binance account, 69,291.2 USDT were sent from **SU**'s Binance account to Daxx6 (the same address to which the shell company victim funds were sent).

56. Based on the above analysis of Victim 2's Coinbase account, public blockchain ledgers, and **SU**'s Binance account, I believe that **SU** directly received laundered victim proceeds and then moved the funds to the Daxx6 address.

### VI.  CONCLUSION

57. Based on my training and experience, there is probable cause to believe **SU** and co-conspirators facilitated the transfer of victim funds to domestic and international bank accounts. Co-conspirators set up approximately 74 U.S. shell companies that received millions of dollars in wire fraud proceeds from victims of cryptocurrency investment scams. **SU** worked with co-conspirators to open and manage Bahamas Account #1, maintained information on the fraudulent shell companies, and organized payments between co-conspirators for the scheme. **SU** also received victim proceeds into his personal cryptocurrency account.

58. For all of the reasons described above, there is probable cause to believe that **SU** has committed a violation of conspiracy to commit money laundering, in violation of Title 18, United States

Code, Section 1956(h) involving the proceeds of wire fraud, in
violation of Title 18, United States Code, Section 1343.


Attested to by the applicant
In accordance with the requirements
Of Fed. R. Crim. P. 4.1 by
Telephone on this  22nd  day of
November, 2024.

_____
THE HONORABLE ALICIA G. ROSENBERG
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 24-04513-MJ-LOUIS

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

JINGLIANG SU,
       a/k/a "Jingliang Su Martinez" and
       "James,"

        Defendant.

_____/

## DEFENDANT'S INVOCATION OF
## RIGHT TO SILENCE AND COUNSEL

The defendant named above does hereby invoke his or her rights to remain silent and to counsel with respect to any and all questioning or interrogation, regardless of the subject matter, including, but not limited to, matters that may bear on or relate to arrest, searches and seizures, bail, pretrial release or detention, evidence at trial, guilt or innocence, forfeitures, or that may be relevant to sentencing, enhanced punishments, factors applicable under the U. S. Sentencing Guidelines, restitution, immigration status or consequences resulting from arrest or conviction, appeals or other post-trial proceedings.

The defendant requests that the U. S. Attorney ensure that this invocation of rights is honored, by forwarding a copy of it to all law enforcement agents, government officials, or employees associated with the investigation of any matters

relating to the defendant. Any contact with the defendant must be made through the defendant's lawyer, undersigned counsel.

Respectfully submitted,

HECTOR A. DOPICO
FEDERAL PUBLIC DEFENDER

By:    _/s/ Eboni Blenman_
       Eboni Blenman
       Assistant Federal Public Defender
       Special Bar No. A5502989
       150 W. Flagler Street, Suite 1700
       Miami, Florida 33130
       Tel: 305-530-7000
       E-Mail Address: eboni_blenman@fd.org

## CERTIFICATE OF SERVICE

I HEREBY certify that on **December 7, 2024**, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

_/s/ Eboni Blenman_
Eboni Blenman

2

# MINUTE ORDER

Page 12

## Magistrate Judge Lauren F. Louis

**Atkins Building Courthouse - 11th Floor**          Date: 12/6/24          Time: 2:00 p.m.

Defendant: Jingliang Su          J#: 13951-506          Case #: 24-MJ-4513-LOUIS

AUSA: Marc Chattah          Attorney: Eboni Blenman, AFPD

Violation: CD CA/WARRANT/COMPLAINT/Money Laundering          Surr/Arrest Date: 12/5/24          YOB: 1980

Proceeding: Initial Appearance          CJA Appt:

Bond/PTD Held: ☐ Yes  ☐ No          Recommended Bond: **Pretrial Detention**

Bond Set at:          Co-signed by:

☐ Surrender and/or do not obtain passports/travel docs          Language: **Mandarin**

☐ Report to PTS as directed/ _____ x's a week/month by phone: _____ x's a week/month in person

☐ Random urine testing by Pretrial Services
  Treatment as deemed necessary

☐ Refrain from excessive use of alcohol

☐ Participate in mental health assessment & treatment

☐ Maintain or seek full-time employment/education

☐ No contact with victims/witnesses, except through counsel

☐ No firearms

☐ Not to encumber property

☐ May not visit transportation establishments

☐ Home Confinement/Electronic Monitoring and/or Curfew _____ pm to _____ am, paid by _____

☐ Allowances: Medical needs, court appearances, attorney visits, religious, employment

☐ Travel extended to:

☐ Other:

Disposition:
 Defendant advised of his rights and charges; Defendant sworn.

**Ore tenus motion for court appointed counsel -GRANTED-. AFPD appointed.**

**Government ore tenus motion for Pretrial Detention hearing -GRANTED-. Defense ore tenus motion for Bond – DENIED-.**

**\*\* BRADY ORDER NOT GIVEN \*\***

Time from today to _____ excluded from Speedy Trial Clock

**NEXT COURT APPEARANCE**          Date:          Time:          Judge:          Place:

Report RE Counsel:

**PTD**/Bond Hearing: **12/11/24**          **1:00 pm**          **Duty**          **Miami**

Prelim/Arraign or **Removal**: "          "          "          "

Status Conference RE:

D.A.R. **14:06:05; 15:16:09**          Time in Court: **20 mins**

s/Lauren F. Louis          Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-04513-MJ-LOUIS

UNITED STATES OF AMERICA,

                Plaintiff,

vs.

JINGLIANG SU,
 a/k/a "Jingliang Su Martinez" and
 "James,"

                Defendant.

_____/

## NOTICE OF APPEARANCE

      The Federal Public Defender for the Southern District of Florida gives notice that undersigned counsel will be appearing for the defendant in the above referenced case.

                Respectfully submitted,

                HECTOR A. DOPICO
                FEDERAL PUBLIC DEFENDER

By:    */s/ Eboni Blenman*_____
       Eboni Blenman
       Assistant Federal Public Defender
       Special Bar No. A5502989
       150 W. Flagler Street, Suite 1700
       Miami, Florida 33130
       Tel: 305-530-7000
       E-Mail Address: eboni_blenman@fd.org

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 9, 2024, undersigned counsel electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.


*/s/ Eboni Blenman*
Eboni Blenman

# MINUTE ORDER

Page 3

## Magistrate Judge Lisette Marie Reid

**Atkins Building Courthouse - 3rd Floor**      Date: 12/11/2024  Time: 1:00 p.m.

Defendant:  **Jingliang Su**        J#: 13951-506    Case #:  24-MJ-4513-LOUIS

AUSA:  Ali Comolli        Attorney:  AFPD - Eboni Blenman

Violation:  CD CA/Warrant/Complaint/Money Laundering

Surr/Arrest Date:     YOB:

Proceeding:  Removal/Detention        CJA Appt:

Bond/PTD Held: ○ Yes  ☑ No    Recommended Bond: Pretrial Detention

Bond Set at:        Co-signed by:

☐ Surrender and/or do not obtain passports/travel docs

Language:  Mandarin

☐ Report to PTS as  directed/or _____ x's a week/month by phone: _____ x's a week/month in person

☐ Random urine testing by Pretrial Services
   Treatment as deemed necessary

☐ Refrain from excessive use of alcohol

☐ Participate in mental health assessment & treatment

☐ Maintain or seek full-time employment/education

☐ No contact with victims/witnesses, except through counsel

☐ No firearms

☐ Not to encumber property

☐ May not visit transportation establishments

☐ Home Confinement/Electronic Monitoring and/or Curfew _____ pm to _____ am, paid by _____

☐ Allowances: Medical needs, court appearances, attorney visits, religious, employment

☐ Travel extended to:

☐ Other:

Disposition:

*Brady Order Not Given*

- deft waives Removal

- Stip PTD w/ Right to revisit in cd/ca

- Warrant of Removal issued

- Brady order given

Time from today to _____ excluded from Speedy Trial Clock

**NEXT COURT APPEARANCE**   Date:      Time:      Judge:        Place:

Report RE Counsel:

PTD/Bond Hearing:

Prelim/Arraign or Removal:

Status Conference RE:

D.A.R.  13:19:14        Time in Court:  5 minutes

s/Lisette Marie Reid        Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
Case No: 24-MJ-4513-LOUIS

United States of America
     Plaintiff,

  v.

                      Charging District's Case No.  2:24-MJ-07038

Jingliang Su,
     Defendant.

_____/

## WAIVER OF RULE 5 & 5.1 REMOVAL/IDENTITY HEARINGS

I understand that I have been charged in another district, the **Central District of California.**

I have been informed of the charges and of my rights to:

(1)      retain counsel or request the assignment of counsel if I am unable to retain counsel;
(2)      an identity hearing to determine whether I am the person named in the charges;
(3)      production of the warrant, a certified copy of the warrant, or a reliable electronic copy of either;
(4)      a preliminary hearing within 14 days of my first appearance if I am in custody and 21 days otherwise — unless I am indicted — to determine whether there is probable cause to believe that an offense has been committed;
(5)      a hearing on any motion by the government for detention;
(6)      request transfer of the proceedings to this district under Fed. R. Crim. P. 20, to plead guilty.

I agree to waive my rights to: **(check those that apply)**

☐ An identity hearing and production of the warrant.

☐ A preliminary hearing.

☐ A detention hearing in the Southern District of Florida.

☑ An identity hearing, production of the warrant, and any preliminary or detention hearing to which I may be entitled to in this district. I request that those hearings be held in the prosecuting district, at a time set by that court.

I consent to the issuance of an order requiring my appearance in the prosecuting district where the charges are pending against me.

*Jingliang Su*
_____
Defendant's Signature

Date: 12/11/2024

*Lisette Reid*
_____
Lisette Marie Reid
United States Magistrate Judge

# United States District Court
## Southern District of Florida
Case No. 24-MJ-4513-LOUIS

UNITED STATES OF AMERICA,

    v.

                                Charging District's Case No. 2:24-MJ-07038

Jingliang Su,
(USM# 13951-506)
_____/

### COMMITMENT TO ANOTHER DISTRICT

The defendant has been ordered to appear in the Central District of California.

_____A F P D_____ was appointed to represent

**Defendant for proceedings in this District.**

The defendant remains in custody after the initial appearance in the Southern District of Florida.

**IT IS ORDERED** that the United States marshal must transport the defendant, together with a copy of this order, to the charging district and deliver the defendant to the United States marshal for that district, or to another officer authorized to receive the defendant. The marshal or officer in the charging district should immediately notify the United States attorney and the clerk of court for that district of the defendant's arrival so that further proceedings may be promptly scheduled. The clerk of this district must promptly transmit the papers and any bail to the charging district.

**DONE AND ORDERED** at Miami, Florida on 12/11/2024.

_____
Lisette Marie Reid
United States Magistrate Judge